# IN THE UNITED STATES DISTRICT COURT
## FOR THE WESTERN DISTRICT OF NORTH CAROLINA
### ASHEVILLE DIVISION
#### 1:08cv550

| | | |
|---|---|---|
| ZEP, INC., | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| Vs. | ) | **MEMORANDUM AND** |
| | ) | **RECOMMENDATION** |
| MIDWEST MOTOR SUPPLY CO. | ) | |
| d/b/a KIMBALL MIDWEST; STEVEN | ) | |
| LAVE; and SAMUEL TRANTHAM, | ) | |
| Defendants. | ) | |
| _____ | ) | |

**THIS MATTER** is before the court upon defendants' Motion to Dismiss. Having carefully considered defendants' Motion to Dismiss and reviewed the pleadings, the court enters the following findings, conclusions, and Recommendation.

## FINDINGS AND CONCLUSIONS

### I.    Background

This action was originally filed by plaintiff in the United States District Court for the Southern District of Ohio, Eastern Division, on November 14, 2008. By agreement of the parties, this action (which is a portion of the original action), was transferred to this district and division on December 22, 2008. The 29 page Amended Complaint has not been further amended after transfer to exclude allegations

concerning parties who are no longer present in this action.[1]

Having gleaned relevant claims, allegations, and demands from the Amended Complaint, it appears that the individual defendants in this action are all former employees of plaintiff who now all work for defendant Midwest Motor Supply Co. (hereinafter "Midwest"), which plaintiff contends is a competitor. Am. Cmplt., at ¶¶ 2&3. Plaintiff specifically alleged that "all Defendants in this matter have all worked in concert to violate the rights of Plaintiff Zep . . . ." Id., at ¶ 4. Indeed, plaintiff goes on to allege in paragraph six that the defendants "conspired." Id., at ¶ 6. Plaintiff asserts that subject matter jurisdiction exists over this action inasmuch as there is "complete diversity of citizenship between Zep and all Defendants and the amount in controversy exceeds $75,000, exclusive of costs." Id., at ¶ 7.

Plaintiff contends that it entered into non-disclosure and non-compete agreements with the individual defendants to protect its confidential information, trade secrets, and business relationships. Id., at ¶¶ 13, 14, & 17. Plaintiff further alleges that upon termination of employment, sales representatives are required to return physical manifestations of confidential information and trade secrets to plaintiff, id., at ¶ 16, which the undersigned concludes are customer lists. As a part

---

[1]     Plaintiff is advised that if this action is allowed to continue in this court, it should take prompt steps under Rule 15, Federal Rules of Civil Procedure, to clean up its pleading in this matter.

of the employee agreement, plaintiff alleges that each individual defendant covenanted and agreed (among other things) to not solicit plaintiff's customers for a period of 12 months following termination and not to disclose confidential information for a period of 18 months. Id., at ¶¶ 18 & 19. Further, plaintiff contends that the individual defendants agreed not to induce other employees to leave their employment with plaintiff for a period of 12 months following termination. Id. See also id., at ¶¶ 18 & 19.

Plaintiff alleges that the employment of Defendant Lave ended on March 17, 2008, and that Defendant Trantham's employment ended June 2, 2008. Id., at ¶ 26. In addition, plaintiff alleges that Defendant Midwest targeted the individual defendants for employment based on their knowledge of plaintiff's confidential information and trade secrets, as well as for the relationships they had developed with plaintiff's customers while in plaintiff's employ. Id., at ¶ 27. Plaintiff alleges that Defendant Midwest knew of the alleged contractual obligations between plaintiff and the individual defendants when it employed them and continues to retain such employees with the intention that such individual defendants violate their contractual obligations. Id., at ¶ 28.

Plaintiff alleges that such individual defendants have acted in concert with Defendant Midwest and used and disclosed plaintiff's trade secrets and confidential

information to Defendant Midwest in violation of their agreements. Id., at ¶ 30. Plaintiff contends that, in concert with Defendant Midwest, the individual defendants have solicited plaintiff's accounts, id., at ¶ 31, induced or attempted to induce plaintiff's employees to leave plaintiff, id., at ¶ 32, and failed to return confidential and secret materials. Id., at ¶ 33.

For causes of action, plaintiff has alleged the following claims against the individual defendants: (1) Breach of Contract; (2) Misappropriation of Trade Secrets; (3) Misappropriation of Confidential Information; (4) Temporary and Permanent Injunction; and (5) Breach of Duty of Loyalty and Good Faith.

Plaintiff has asserted claims against Defendant Midwest for: (1) Tortious Interference with Contractual Relations; and (2) Tortious Interference with Employment Relationship..

While not specifying dollar amounts as to any claim, plaintiff seeks compensatory and injunctive relief as well as punitive damages. Plaintiff also seeks punitive damages as to all defendants.

Defendants have jointly moved to dismiss this action in accordance with Rule 12(b)(1), Federal Rules of Civil Procedure, arguing that the plaintiff has failed to properly invoke this court's subject matter jurisdiction as the amount in controversy does not exceed $75,000.00 as to each defendant. Defendants argue that

Plaintiff does not allege that the claims related to each Defendant individually satisfy the jurisdictional requirement of 28 U.S.C. § 1332. In particular, Plaintiff fails to allege in its Complaint that the matters in controversy against each Defendants Lave and Trantham, as well as the matter in controversy implicated by its claims against Defendant Kimball Midwest, independently of one another, exceed the sum or value of $75,000. Plaintiff fails to provide any basis upon which this Court may make a determination as to the amount in controversy implicated by the claims against each Defendant.

Motion to Dismiss, at pp. 1-2.

## II.    Applicable Standard: Rule 12(b)(1)

Rule 12(b)(1) provides for dismissal where the court lacks jurisdiction over the subject matter of the lawsuit. Lack of subject-matter jurisdiction may be raised at any time either by a litigant or the court. <u>Mansfield, C. & L.M.R. Co. v. Swan</u>, 111 U.S. 379, 382 (1884). The ability of the court to independently address subject-matter jurisdiction is important to finality inasmuch as a litigant, even one who remains silent on the issue of jurisdiction, may wait until they receive an adverse judgment from a district court and raise the issue of subject-matter jurisdiction for the first time on appeal, thereby voiding the judgment. <u>Capron v. Van Noorden</u>, 2 Cranch 126, 127, 2 L.Ed. 229 (1804). The Federal Rules of Civil Procedure anticipate this issue and provide that "[w]henever it appears by suggestion of the parties or otherwise that the court lacks jurisdiction of the subject matter, the court shall dismiss the action." Fed.R.Civ.P. 12(h)(3).

When a court considers its subject-matter jurisdiction, the burden of proof is on the plaintiff.  <u>Adams v. Bain</u>, 697 F.2d 1213, 1219 (4th Cir. 1982).  In <u>Richmond, Fredricksburg & Potomac R.R. Co. V. United States</u>, 945 F.2d 765 (4th Cir. 1991) (Ervin, C.J.), the Court of Appeals for the Fourth Circuit held, as follows

> In determining whether jurisdiction exists, the district court is to regard the pleadings' allegations as mere evidence on the issue, and may consider evidence outside the pleadings without converting the proceeding to one for summary judgment. <u>Id.</u>; <u>Trentacosta v. Frontier Pacific Aircraft Indus.</u>, 813 F.2d 1553, 1558 (9th Cir.1987). The district court should apply the standard applicable to a motion for summary judgment, under which the nonmoving party must set forth specific facts beyond the pleadings to show that a genuine issue of material fact exists. <u>Trentacosta</u>, <u>supra</u>, 813 F.2d at 1559 (citing <u>Celotex Corp. v. Catrett</u>, 477 U.S. 317, 323-24, 106 S.Ct. 2548, 2552-53, 91 L.Ed.2d 265 (1986)). The moving party should prevail only if the material jurisdictional facts are not in dispute and the moving party is entitled to prevail as a matter of law. <u>Trentacosta</u>, <u>supra</u>, 813 F.2d at 1558. A district court order dismissing a case on the grounds that the undisputed facts establish a lack of subject matter jurisdiction is a legal determination subject to de novo appellate review. <u>Revene v. Charles County Comm'rs</u>, 882 F.2d 870, 872 (4th Cir.1989); <u>Shultz v. Dept. of the Army</u>, 886 F.2d 1157, 1159 (9th Cir.1989).

<u>Id.</u>, at 768-69.  Where jurisdictional facts are intertwined with facts central to the substance of a case, a court must find that jurisdiction exists and consider and resolve the jurisdictional objection as a direct attack on the merits of the case.  <u>United States v. North Carolina</u>, 180 F.3d 574, 580 (4th Cir. 1999).

## III.  Discussion

### A.  Introduction

A jurisdictional amount has been the second prong of diversity jurisdiction since the Judiciary Act of 1789--1 Stat. 73, 79 (Sept. 24, 1789).  While discussing the jurisdictional amount in the context of a case removed to federal court, the Supreme Court's decision in <u>Saint Paul Mercury Indemnity Co. v. Red Cab Co.</u>, 303 U.S. 283 (1938), is helpful in framing the issues in this case:

> There is a strong presumption that the plaintiff has not claimed a large amount in order to confer jurisdiction on a federal court or that the parties have colluded to that end. . . . Moreover, the status of the case as disclosed by the plaintiff's complaint is controlling in the case of a removal, since the defendant must file his petition before the time for answer or forever lose his right to remove.  Of course, if, upon the face of the complaint, it is obvious that the suit cannot involve the necessary amount, removal will be futile and remand will follow.  But the fact that it appears from the face of the complaint that the defendant has a valid defense, if asserted, to all or a portion of the claim, or the circumstance that the rulings of the district court after removal reduce the amount recoverable below the jurisdictional requirement, will not justify remand.

<u>Id.</u>, at 290-92 (footnotes omitted).  While comity with state courts demands that a federal court presume that a jurisdictional amount is not met, the court must look to the <u>face</u> of the Amended Complaint to determine whether the jurisdictional amount has been met.  In this case, the court has also considered the declarations and affidavits filed by the respective parties inasmuch as defendants have argued that

plaintiff's assertion of an amount exceeding $75,000.00 was untrue.

## B.      Determining the Amount in Controversy

As discussed above, the face of the Amended Complaint does not provide a dollar amount of damages sought by plaintiff, but it does contain an allegation that the amount in controversy exceeds $75,000.00.  The Court of Appeals for the Fourth Circuit has held that the amount in controversy is measured by the pecuniary result to *either* the plaintiff or the defendant.  Government Employees Ins. Co. v. Lally, 327 F.2d 568, 569 (4th Cir. 1964).  Consistent with applicable decisions in the Fourth Circuit, the Court of Appeals for the Third Circuit has held that "the amount in controversy is not measured by the low end of an open-ended claim, but rather by a reasonable reading of the value of the rights being litigated."  Angus v. Shiley, Inc., 989 F.2d 142, 146 (3rd Cir. 1993).

## C.      Making a Reasonable Determination of the Value of the Rights Litigated

### 1.      Aggregation of Claims

The first hurdle in determining the value of the right being litigated is determining whether the claims against the various defendants can be aggregated or whether the jurisdictional amount must be met as to each defendant.

Analysis of this issue begins with Sovereign Camp, Woodmen of the World v.

O'Neill, 266 U.S.292 (1924), which stands for the general proposition that courts do not aggregate claims, except in certain situations where an exception applies.  Id. Neither plaintiff nor defendants have delved into the exception, which defendants simply argue does not apply without explanation.  See  Defendants' Brief, at 7. Plaintiff does not take up the issue.

Review of Sovereign Camp reveals that the Court explained this exception as follows:

> An exception to this general rule was, however, recognized in McDaniel v. Traylor, 196 U. S. 415, 427, 25 S. Ct. 369, 49 L. Ed. 533. There the heirs of one Hiram Evans, an intestate, brought suit in the circuit court against several defendants to enjoin the enforcement of claims that had been allowed as liens upon his real estate by orders of a probate court. Each claim was less than the requisite jurisdictional amount, but their aggregate exceeded that sum. The bill alleged that these claims were not debts of the intestate, but that the defendants had conspired and confederated with the administrator to secure their payment out of the estate, and that the orders allowing them had been procured as the result of the conspiracy and the fraud practiced in pursuance thereof. This court reversed a decree of the circuit court dismissing the bill, on demurrer, for want of jurisdiction, and held that, on the face of the bill, the value of the matter in dispute was 'the aggregate amount of the claims fraudulently procured by the defendants **acting in combination** to be allowed in the Probate Court as claims against the estate.

Id., at 295-296 (emphasis added).  In modern terms, the exception appears to be made for cases involving civil conspiracy.  Defendants fail to explain why the exception would not apply in this case inasmuch as plaintiff has specifically alleged that these

defendants "conspired" and "acted in concert" in detriment to plaintiff's rights.  Am. Cmplt., at ¶¶ 4, 6, 8, 30, 31, & 32.

Defendants are quite correct that courts usually do not aggregate claims against multiple defendants in determining whether the jurisdictional amount has been met. Sovereign Camp, supra.  In addition, they correctly argue aggregation is not allowed "in the absence of allegations of joint and several liability," Defendants' Brief, at 11, which would appear to be an outgrowth of the acting in combination exception. While it is arguable that plaintiff alleged conspiracy, there is no demand for imposition of joint and several liability in the Amended Complaint.

While defendants are correct in their analysis, they have not addressed the reported cases which allowed aggregation outside of joint and several liability cases. In Nashville, C. & St. L. Ry. Co. v. McConnell, 82 F. 65 (M.D. Tenn. 1897), the court determined that claims against individual ticket scalpers could be aggregated to reach the jurisdictional amount where the actions of the scalpers violated the contractual obligation prohibiting resale. The court stated that the plaintiffs' actions were not suits upon the individual ticket contracts, but were suits to protect the business of the plaintiffs against irreparable damage being suffered by reason of the fraudulent use of the tickets.  The court further held that the amount in controversy was not the damage that might be specifically recovered in a suit upon any one or more of the

scalped tickets, but was the value of the whole object of the suit to the plaintiffs.  Id.

_____There are other cases  similar to the one presented herein where courts allowed aggregation where the harm involved injury to a business due to unfair trade practices. See Harvey v. American Coal Co., 50 F.2d 832 ( 7th Cir. 1931); Seagram-Distillers Corp. v. New Cut Rate Liquors, Inc., 245 F.2d 453 (7th Cir. 1957); Calvert Distillers Corp. v. Rosen, 115 F. Supp. 146 (N.D. Ill. 1953).  While over 100 years old, the decision in McConnell, supra, still rings true inasmuch as the Supreme Court has more recently held that the amount in controversy is measured by the value of the object of the litigation.  Hunt v. Washington State Apple Advertising Comm'n, 432 U.S. 333, 347 (1977).

It does appear that aggregation of claims may well be possible in a claim such as this where plaintiff alleges that a business competitor acted in concert with plaintiff's employees to procure confidential information and business secrets. Inasmuch as plaintiff has failed to take up the issue of the conspiracy exception enunciated by the Court in Sovereign Camp, the undersigned will simply not aggregate claims on this record.

### 2.    Review of Amount in Controversy as to Each Defendant

Without aggregation of claims, the court must now determine the value of the rights being litigated as to each defendant.  There is a great deal of disagreement in

the pleadings as to how the value should be determined, whether one party has failed to count certain claims, and whether other parties have double counted.

While there are a multitude of claims in this matter, the primary relief sought appears to be injunctive relief against the individual defendants.  While plaintiff has cited a West Virginia district court decision, <u>Zimmer-Hatfield, Inc. v. Wolf</u>, 843 F.Supp. 108 (S.D.W.Va. 1994), as providing the correct method for valuing an injunctive relief claim, the undersigned finds that application of such decision in this particular case would result in a double counting of possible damages.  Instead, and ironically, it appears that a case on which the West Virginia court relied, <u>Zep Mfg. Corp. v. Haber</u>, 202 F.Supp. 847 (S.D.Tex. 1962), is squarely on point and provides a most logical method for evaluating a claim for injunctive relief in the context of a sales associate violating a non-compete agreement:

> In a suit for an injunction, the amount in controversy is determined by the value of the object to be gained by the plaintiff. <u>Glenwood Light & Water Co. v. Mutual Light, Heat & Power Co.</u>, 239 U.S. 121, 36 S.Ct. 30, 60 L.Ed. 174 (1915). In terms promulgated by this circuit, 'jurisdiction is to be tested by the value of the right sought to be protected against interference.' <u>Seaboard Finance Co. v. Martin</u>, 244 F.2d 329 (5th Cir. 1957). Although some courts have held that the amount in controversy is the benefit to the plaintiff from the injunction, or the cost to the defendant of complying with it, whichever is greater (*See, e.g.*, <u>Ronzio v. Denver & R.G.W.R.Co.</u>, 116 F.2d 604, 606 (10th Cir. 1940)), 'the more recent opinions, as a group, reflect the plaintiff-viewpoint concept in determining jurisdictional amount.' 1 *Moore's Federal Practice* 869, 870 (1960 Ed.). Thus, in resolving the

dispute engendered by the defendant's challenge to plaintiff's allegations of jurisdictional amount, it is necessary to determine the benefit to the plaintiff from the injunction sought.

Id., at 848. In Haber, the court looked to the profit generated by defendant for plaintiff in the year previous to his termination in determining whether the jurisdictional amount was met. Plaintiff's reliance on Zimmer-Hatfield in adding gross sales is a double counting and is not relevant in this context as the court is tasked with assigning this claim a reasonable value. The court does agree with plaintiff, however, that valuation of the injunctive relief is just the beginning point as the value of each claim against each defendant must be considered.

With no aggregation of claims and the Haber formula in hand, the undersigned will now evaluate the reasonable value of the claims asserted against each defendant.

### D.    Defendant Lave

For causes of action, plaintiff has alleged the following claims against Defendant Lave: (1) Breach of Contract; (2) Misappropriation of Trade Secrets; (3) Misappropriation of Confidential Information; (4) Temporary and Permanent Injunction; and (5) Breach of Duty of Loyalty and Good Faith. Each reasonable value of each claim will be discussed briefly *seriatim*.

### 1.    Breach of Contract

Assuming that plaintiff prevails on a breach of contract claim against this

defendant, plaintiff has alleged three distinct acts that it contends violated the contract: (1) solicitation of its customers in violation of the non-compete provision; (2) recruiting of other employees; and (3) misappropriation of trade secrets and confidential information. Am. Cmplt., at ¶ 49. The parties appear to be in agreement that the measure of damages for such a breach would be the lost profits attributable to the breach for a year.

The parties disagree as to the availability of treble damages, with plaintiff citing Southern Bldg. Maint., Inc. v. Osborne, 489 S.E.2d. 892, 896-97 (N.C.App. 1997) for the proposition that they are available and defendants citing Kinesis Advertising, Inc. v. Hill, 187 N.C.App. 1, 21 (2007) for the proposition that treble damages are not available. While the cases appear to be at odds, it would appear that Kinesis appears to be prevailing law in North Carolina:

> We have consistently held that the employer/employee relationship does not fall within the intended scope and purpose of the Unfair and Deceptive Trade Practices Act (UDTP). *See, e.g.*, Buie v. Daniel Int'l Corp., 56 N.C.App. 445, 448, 289 S.E.2d 118, 119-20, *disc. review denied*, 305 N.C. 759, 292 S.E.2d 574 (1982). Indeed, we have specifically held that a violation of a covenant-not-to-compete, essentially a breach of contract within the employer/employee relationship, lies outside the scope of the UDTP. *See* American Marble Corp. v. Crawford, 84 N.C.App. 86, 88, 351 S.E.2d 848, 849-50 (affirming summary judgment against a claim alleging that a covenant-not-to-compete violated the UDTP), *disc. review denied*, 319 N.C. 464, 356 S.E.2d 1 (1987).

Id., at 21. This disagreement may be whistling in the wind inasmuch as plaintiff has failed to bring a claim under North Carolina's UDTP. When viewed at this point in time, treble damages simply are not available either as a matter of law and/or because plaintiff has failed to assert a UDTP claim.

Thus, the most plaintiff could reasonably recover for this claim is one year's lost profits.

### 2.    Misappropriation of Trade Secrets

While generally pled, it would appear that this cause of action may well be a cause of action under Chapter 66-152 of the North Carolina General Statutes for violation of the Trade Secrets Protection Act. In its reply, defendants argue that "[a]lleged lost profit also constitutes the recovery available to Plaintiff for misappropriation of trade secrets," Reply, at 5, and properly cite the court to Section 66-154(b) of the Act. Defendants fail to point out, however, that the very next subsection of the Act also provides for punitive damages in the event of a willful and malicious misappropriation. N.C.Gen.Stat. 66-154(c). Review of the Amended Complaint clearly reveals that it is possible for plaintiff to show that Defendant Lave willfully misappropriated its trade secrets and did so maliciously in the sense that he did so with "reckless disregard of another's rights." Black's Law Dictionary (5th Ed.). Thus, plaintiff could reasonably receive a multiple of its actual damages as punitive

damages on this claim.

### 3. Misappropriation of Confidential Information

Plaintiff has also stated a claim for Misappropriation of Confidential Information. Such a claim would appear to be a restatement of the Misappropriation of Trade Secrets claim and thus would provide no relief not otherwise recoverable in the first claim.

### 4. Temporary and Permanent Injunction

The measure of damages for injunctive relief is discussed above.

### 5. Breach of Duty of Loyalty

Plaintiff has also asserted a claim for Breach of Duty of Loyalty and Good Faith. North Carolina law is clear that "outside the purview of a fiduciary relationship, our State does not recognize an independent tort for breach of duty of loyalty by an at-will employee." Combs & Associates, Inc. v. Kennedy, 147 N.C.App. 362, 372 (2001)(citation omitted).

### 6. Conclusion

Defendant Lave contends that his efforts generated only $41,000.00 in profits in the year previous to his departure. Defendants' Brief, at 14. Plaintiff has presented evidence that in the twelve months preceding the departure of Defendant Lave, Defendant Lave generated $71,117.00 in profit for plaintiff. See Plaintiff's Ex. A,

Affidavit of Brad Peterson, at ¶ 10. For the purpose of the pending motion, the court must accept plaintiff's calculation. Inasmuch as plaintiff would not be entitled to recover more than once for its actual damages, the undersigned has considered such to be the reasonable value of the claim for compensatory damages asserted against Defendant Lave. Plaintiff has also asserted a claim for Misappropriation of Trade Secrets. While plaintiff could only receive one award of compensatory damages, Chapter 66-154(C) clearly provides for an award of punitive damages. Based on the court's own experience as a trial attorney, who during his practice obtained a verdict for a plaintiff for punitive damages against a defendant, a punitive damage award is usually at least the amount of compensatory damages and is sometimes more. Plaintiff has, therefore, satisfied the amount in controversy as to Defendant Lave.

### E. Defendant Trantham

For causes of action against the Defendant Trantham, plaintiff has alleged the following claims against Defendant Trantham: (1) Breach of Contract; (2) Misappropriation of Trade Secrets; (3) Misappropriation of Confidential Information; (4) Temporary and Permanent Injunction; and (5) Breach of Duty of Loyalty and Good Faith. For the purpose of brevity, the claims will not be discussed individually as to Defendant Trantham inasmuch as the analysis is same as that applied to Defendant Lave.

Again, plaintiff would be entitled to one recovery for its actual damages. Defendant Trantham contends that he generated $60,000.00 in profits for plaintiff in the year previous to his departure. Defendants' Brief, at 16. Plaintiff has presented evidence, however, that in the twelve months preceding the departure of this defendant, that Defendant Trantham generated $107,552.00 in profits. <u>See</u> Plaintiff's Ex. A, Affidavit of Brad Peterson, at ¶ ¶ 7 & 10. For the purpose of the pending motion, as discussed above, the court must accept the plaintiff's version. Inasmuch as plaintiff would not be entitled to recover more than once for its actual damages, the undersigned has considered such to be the reasonable value of the claim for compensatory damages asserted against Defendant Trantham. Plaintiff has also asserted a claim for Misappropriation of Trade Secrets. While plaintiff could only receive one award of compensatory damages, Chapter 66-154(C) clearly provides for an award of punitive damages. As stated above, based on the court's own experience, a punitive damage award is usually at least the amount of compensatory damages and is sometimes more. Plaintiff has, therefore, satisfied the amount in controversy as to Defendant Trantham.

## F.    Defendant Midwest

Plaintiff has asserted claims against Defendant Midwest for: (1) Tortious Interference with Contractual Relations; and (2) Tortious Interference with

Employment Relationship. A reasonable value of these claims may well be measured by the amount of profit generated in the year prior to the departure of Defendants Lave and Trantham. Indeed, such may well be a conservative measure of damages if plaintiff can prove at trial what it has alleged in the Amended Complaint, to wit, that Defendant Midwest recruited these employees with knowledge of the non-compete agreements and with the intent to unlawfully procure from them protected trade secrets and confidential information. Using the evidence produced by plaintiff, as this court must do, it would appear that the amount in controversy is satisfied as to this defendant.

## RECOMMENDATION

**IT IS, THEREFORE, RESPECTFULLY RECOMMENDED** that defendants' Motion to Dismiss (#29) be **DENIED.**

The parties are hereby advised that, pursuant to 28, United States Code, Section 636(b)(1)(C), written objections to the findings of fact, conclusions of law, and recommendation contained herein must be filed within **ten (10)** days of service of same. Failure to file objections to this Memorandum and Recommendation with the

district court will preclude the parties from raising such objections on appeal.

Thomas v. Arn, 474 U.S. 140 (1985), reh'g denied, 474 U.S. 1111 (1986); United States v. Schronce, 727 F.2d 91 (4th Cir.), cert. denied, 467 U.S. 1208 (1984).

Signed: February 12, 2009

Dennis L. Howell
United States Magistrate Judge